

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| THOMAS BRAZIL, | 1:22-CV-1001-CBK |
| Plaintiff, | |
| vs. | |
| MENARD, INC., | **MEMORANDUM AND ORDER** |
| Defendant. | |

## I.    <u>BACKGROUND</u>

Thomas Brazil ("plaintiff") filed suit against his former employer Menard, Inc. ("defendant") for unlawful discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"). Doc. 1. Menard has motioned this Court to compel arbitration over Mr. Brazil's ADEA claim, invoking the arbitration agreement embedded in plaintiff's employment contract ("Employment Agreement," "Agreement") entered between the parties while plaintiff was employed by the corporation. Doc. 15. The defendant asks this Court to dismiss the matter in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(3)(A)(i), invoking the Federal Arbitration Act ("FAA")'s statutory commands under 9 U.S.C. § 3. In the alternative, Menard asks this Court to stay the litigation pending arbitration.

Mr. Brazil resists Menard's motion, arguing that there is not a "valid and enforceable arbitration agreement" between the parties because the Employment Agreement expired December 31, 2020. PLAINTIFF'S MEMORANDUM BRIEF IN OPPOSITION TO MOTION TO COMPEL ARBITRATION, doc. 19 at 1. For over 40 years Brazil would sign his yearly employment contract with Menard, for whom he worked in Watertown, South Dakota. Plaintiff's ADEA claim centers on assertions of disparate treatment by Menard towards him because of his age, with younger employees treated

more favorably. These allegations occurred between the end of 2019 and December 2020, when the plaintiff's latest and last Agreement was still in effect. The termination, though, took place on January 28, 2021, past the expiration date as listed in the Agreement. Therefore, Brazil posits, this matter was *not* agreed to be decided by binding arbitration. Menard's response centers on the fact that the alleged discriminatory actions occurred *before* termination took place (and while the Agreement was still in effect,) thus qualifying this matter for arbitration.

Section 16 of the Agreement lays out what sort of matters must be sent to arbitration. Its pertinent provisions state:

> In consideration of employment, or continued employment, or promotion and the compensation as outlined in **Appendix B** of this Agreement, you agree that all problems, claims, and dispute(s) experienced within your work area and/or related to your employment with Menards, if you are currently employed by Menards shall first be resolved as outlined in the Team Member Relations section of the *Grow With Menards Team Member Information Booklet*, which is posted on MyMenards intranet site. If you are unable to resolve the dispute by these means, choose not to utilize such means, or you are no longer employed by Menards you agree to submit your dispute(s) to final and binding arbitration. **Arbitration shall be the sole and exclusive forum and remedy for all covered disputes of either you or Menard, Inc.** Problems, claims, or disputes subject to binding arbitration include, but are not limited to: statutory claims under 42 U.S.C. § 1981, the Age Discrimination in Employment Act (ADEA) . . . and non-statutory claims such as contractual claims, quasi-contractual claims, tort claims, and any and all causes of action arising under state laws or common law. Menards agrees that it shall submit any and all claims it may have, if any, in compliance with this section, except as provided in paragraph 8 of this Agreement. . .
>
> Any and all claims shall be resolved by binding arbitration at a location within the county of your Menards employment where the dispute arose pursuant to the National Rules of the Resolution of Employment Disputes of the American Arbitration Association ("AAA") located at 150 North Michigan Avenue, Suite 3050, Chicago, Illinois 60601-7601, and with AAA-affiliated arbitrators. . .

> You and Menards hereby agree that all arbitrators selected shall be attorneys.  This provision shall supersede any contrary rule or provision of the forum state. . .
>
> Menards is engaged in commerce using U.S. Mail and telephone service. Therefore, this Agreement is subject to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, as amended from time to time.

EMPLOYMENT AGREEMENT, doc. 12-1 at 5 (emphases in original).  So, if there was a binding arbitration agreement in place when the alleged transgressions took place, this matter cannot be litigated in this Court, but rather by an arbitration panel in Codington County, South Dakota.  Other relevant portions of the Agreement to this motion include Section 14, which provides for "legal relations created between [the parties]" to be construed under Wisconsin law; Section 17's "At-Will Employment" stating that "Nothing in this Agreement is to be construed as altering your status as an 'at-will' employee;" and bears noting that this Agreement was not in fact signed by Brazil, but rather acknowledged on April 5, 2020. Id. at 5–7.  While the Agreement's expiration date was December 31, 2020, both parties continued operating as if this was perfunctory. Mr. Brazil continued to come into work.  Menard continued treating him as if he was still bound by its prior Employment Agreement through continued compensation and delegation of tasks.  Simply put, neither party acted as if December 31, 2020, was really Brazil's last day of employment.  So, then, what was the plaintiff for the weeks he continued working in January 2021?  An employee, a contractor, a trespasser?

Neither party disputes that Wisconsin law must guide this Court on interpreting contract principles.  But they could not differ more on the critical question at the crux of this motion: Was the prior Employment Agreement (and therefore, a binding arbitration agreement) still in effect when Brazil was terminated in January 2021 after its supposed expiration on December 31, 2020, when both parties continued operating as if the Agreement was still in effect and where neither party sought to renegotiate or enter into a new contract?  Because Wisconsin case law is clear that both parties remained bound by the four corners of the prior Employment Agreement, this matter should be stayed so that arbitration may occur.

## II.    ANALYSIS

### A. Federal Arbitration Act

The Federal Arbitration Act arose in the 1920's to "counteract judicial hostility to arbitration and establish 'a liberal federal policy favoring arbitration agreements.'" New Prime Inc. v. Oliveria, 139 S.Ct. 532, 543 (2019) (*quoting* Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). See also Reid v. Doe Run Res. Corp., 701 F.3d 840, 845 (8th Cir. 2012) ("There is strong policy favoring arbitration, and doubts are resolved in favor of arbitration."). With this liberal backdrop, courts enforce arbitration agreements so long as "the dispute falls within the scope" of the contract between the disputing parties. Duncan v. Int'l Mkts. Live, Inc., 20 F.4th 400, 402 (8th Cir. 2021) (per curiam) (internal quotations omitted). Section 4 of the statute "authorizes a 'party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition [a] United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.'" Id. (*quoting* 9 U.S.C. § 4).

Where "the underlying dispute falls within the court's jurisdiction – for example, by presenting a federal question [such as an ADEA-based claim] – then the court may rule on the petition to compel." Badgerow v. Walters, — S.Ct. —, (slip. op., at 2) (2022). When "the terms of a written arbitration agreement [are] 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract,'" this Court must submit the matter to arbitration. Northport Health Servs. of Ark., LLC v. U.S. Dep't of Health & Hum. Servs., 14 F.4th 856, 866 (8th Cir. 2021) (*quoting* 9 U.S.C. § 2).

As the movant, Menard bears the burden to show (1) there was an agreement to arbitrate, and that (2) this dispute falls within the scope of that arbitration agreement. Sommerfeld v. Adesta, LLC, 2 F.4th 758, 761 (8th Cir. 2021). And this question of whether a dispute falls within the four corners of an arbitration agreement is, "at heart, a matter of contract interpretation." Meierhenry Sargent LLP v. Williams, 915 F.3d 507, 510 (8th Cir. 2019). Here, the parties only dispute step (1), whether there was an

4

agreement to arbitrate at the time of Brazil's termination in January 2021, the action at the crux of his claim.  Neither side disputes that if there was a binding agreement in place in January, that this dispute falls squarely within the arbitration clause.  And pursuant to Section 14 of the Agreement, Wisconsin contract law "governs whether an arbitration agreement is valid." Dickson v. Gosepl for ASIA, Inc., 902 F.3d 831, 834 (8th Cir. 2018) (*citing* Faber v. Menard, Inc., 367 F.3d 1048, 1052 (8th Cir. 2004)).  See also Union Elec. Co. v. AEGIS Energy Syndicate 1225, 713 F.3d 366, 368 (8th Cir. 2013) (per curiam) ("In determining whether parties agreed to mandatory arbitration, we apply '[o]rdinary state law contract principles.'") (alteration in original) (*quoting* Keymer v. Mgmt. Recruiters Int'l, Inc., 169 F.3d 501, 504 (8th Cir. 1999)).  As a federal court sitting in diversity, this Court must apply the choice-of-law principles of the state where it sits to determine if the parties' agreement to apply Wisconsin law is permissible.  Miller v. Honkamp Krueger Fin. Servs., Inc., 9 F.4th 1011, 1016 (8th Cir. 2021).

In South Dakota, parties may "'agree to be bound by the law of a particular state,'" so long as it is "'subject to limitation and invalidation by overriding public policy' concerns." Butler Mach. Co. v. Morris Constr. Co., 682 NW2d 773, 776 (S.D. 2004) (*quoting* Dunes Hospitality, L.L.C. v. Country Kitchen Int'l, Inc., 623 NW2d 484, 488 (S.D. 2001)).  Because no public policy concerns are at hand, the Court applies Wisconsin contract law when interpreting whether there is an enforceable arbitration agreement.  See generally Moeckly v. Hanson, 947 NW2d 630, 637–38 (S.D. 2020) (adopting choice of law provision in agreement to enforce Iowa contract principles).

Wisconsin contract interpretation is a question of law.  Am. Family Mut. Ins. Co. v. Cintas Corp. No. 2, 914 NW2d 76, 82 (Wis. 2018).  This Memorandum and Opinion further explains relevant Wisconsin contract principles below.  See *infra* II.C.  While the FAA applies a presumption of arbitrability, that is only *if* and *after* this Court determines there was a binding contract between the parties when the alleged discriminatory adverse actions took place.  See Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am., AFL-CIO v. Trane U.S. Inc., 946 F.3d 1031, 1033 (8th Cir. 2020) ("The presumption of arbitrability does not 'overide[] the principle that a court may submit to

arbitration only those disputes that the parties have agreed to submit.") (alteration in original) (*quoting* Granite Rock Co. v. Int'l Bhd. Of Teamsters, 561 U.S. 287, 302–03 (2010).  See also Foster v. Walmart, Inc., 15 F.4th 860, 862 (8th Cir. 2021) ("[D]isputes are arbitrable only to the extent an agreement between the parties say so.").  So, if there remained a binding Employment Agreement between Brazil and Menard following December 2020 when both parties continued operating under the same workplace parameters as before the formal agreement expired, this matter must be placed into arbitration.  The Court delves into its review of applicable Wisconsin case law without any presumption towards arbitration when deciding whether the Agreement remained binding in January 2021.  First, though, the Court must identify the proper standard of review for defendant's motion.

### B.  <u>Standard of Review</u>

The parties dispute what the appropriate standard of review is for this motion. Defendant Menard brings this motion pursuant to Federal Rule of Civil Procedure 12(b)(3)(A)(i), under the guise that this Court does not have proper venue to entertain this matter.  Brazil pushes back, arguing that this motion should instead be analyzed under Rule 56 for summary judgment, because this Court inherently must consider matters outside the pleadings, specifically the Employment Agreement.  And in the alternative, plaintiff posits this matter should be viewed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Brazil is right the first time; this matter is properly disposed of under the standard for motions pertaining to summary judgment.

Mr. Brazil rightly points to the United States Court of Appeals for the Eighth Circuit's decision in <u>City of Benkelman, Nebraska v. Baseline Engineering Corporation</u>, where the Court quickly disposed of arguments that an arbitration agreement would displace venue from federal courts under Rule 12(b)(3).  <u>See</u> 867 F.3d 875, 880–82 (8th Cir. 2017).  There, like here, a party wrongly asserted that forum-selection clauses strip Courts of proper venue.  <u>Id.</u> at 880.  Rather, "informed by the Supreme Court's reasoning in <u>Atlantic Marine</u> [<u>Construction Company v. United States District Court for the Western District of Texas</u>, 134 S.Ct. 568, 577 (2013)]," the <u>Benkelman</u> Court rightly held

that "[j]ust as a forum-selection clause has no bearing on the issue of whether venue is 'wrong' or 'improper,' an arbitration agreement has no relevance to the question of whether a given case satisfies constitutional or statutory definitions of jurisdiction." Id. at 880–81. Neither party contests that this Court, putting questions of arbitrability aside, is the proper venue for the plaintiff's federal statutory claim where the underlying allegations took place in South Dakota. Accordingly, this matter cannot be disposed of under Rule 12(b)(3). It is immaterial that defendant titled its motion for disposition via improper venue. Instead, what matters is the underlying substance laid out in its briefing. See Neb. Mach. Co. v. Cargotec Sols., LLC, 762 F.3d 737, 741 (8th Cir. 2014) ("[U]nder federal practice the technical name attached to a motion or pleading is not as important as its substance.") (internal quotations and citations omitted).

Instead, the proper standard of review is under Rule 56. The Eighth Circuit has explained that motions to compel arbitration are properly analogized to "the standard [] required of a party opposing summary judgment." Id. at 741–42. Where parties must "rel[y] on matters outside the pleadings" when disputing the applicability of an Employment Agreement, this Court must pursue a "summary judgment standard-viewing" of the evidence, while "resolving all factual disputes in the nonmoving party's favor." Id. at 742.

### C. **Wisconsin Contract Law**

1. *State Ban on Employment Arbitration Agreements is Preempted*

Both parties agree that Wisconsin law determines contract principles at hand, but dispute whether an enforceable contract existed when Mr. Brazil was terminated. Wisconsin contract law provides the clear answer to this dispute. Under Wisconsin law, a contract has three elements: offer, acceptance, and consideration. Runzheimer Int'l, LTD. V. Friedlen, 862 NW2d 879, 885 (Wis. 2015). But here, the question is not whether there was *ever* a contract between Mr. Brazil and Menard, but rather whether there *still was* a contract in January 2021 when he was terminated, while the Employment Agreement lapsed on paper in December 2020. Because the Wisconsin Supreme Court is

7

clear that there was still a contract in effect when terminated, Brazil remained bound by the prior Agreement.

State law would ordinarily ban such arbitration agreements between Menard and Brazil. WIS. STAT. ANN. § 788.01.  However, the FAA preempts any state prohibition. "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 341 (2011) (internal citations ommitted). See also Torres v. Simpatico, Inc., 781 F.3d 963, 968 (8th Cir. 2015) ("[N]o state-law rule that is an obstacle to the accomplishment of the FAA's objectives should be applied to invalidate an arbitration agreement.") (internal quotations omitted).  Accordingly, Wisconsin's prohibition on such arbitration clauses is displaced by federal statute.  See Nevil v. Johnson Controls Int'l PLC, 364 F. Supp. 3d 932, 952–53 (E.D. Wis. 2019) (explaining how Wisconsin's state statute is displaced by the FAA).  With the State statute preempted, though, comes another question: Was this agreement still enforceable after its expiration?

2. *Was the Employment Agreement Still Enforceable After December 2020?*

The core of this dispute, whether the Employment Agreement was still enforceable, has been squarely answered by the Wisconsin Supreme Court time and time again for over 100 years.  The principal case fatal to Brazil is the State Supreme Court's 1963 holding in Borg-Warner Corporation, Ingersoll Kalamazoo Division v. Ostertag. 118 NW2d 900.  In Borg-Warner, the parties found themselves in a similar predicament as here: Mr. Ostertag worked for Borg-Warner on yearly employment contracts, beginning in 1955. Id. at 902.  The first agreement was amended with different terms for the second year.  Ostertag kept working for a third year at Borg-Warner, but never received a new agreement.  The Court held that for this third year of employment, the parties remained bound by the conditions attached to the most recent employment agreement, the contract signed in his second year of employment, despite the fact no new contract was signed. Id.  Crucially, the Supreme Court notes that when a worker continues past the expiration of an employment agreement, "[t]here is a presumption that

8

under such circumstances the terms for the [prior] year were renewed." Id. at 902. Unlike employees "hired without any specific provision for tenure or termination," where questions of whether the relationship is at-will are crucial to uncover, the analysis is far simpler here. Id. at 902–03. "Where an employee is hired by the year and continues in employment *after the end of a particular year*, there is a presumption that he is again employed for the new year on the *same terms as before*." Id. at 903 (emphases added).

This clear pronouncement under Wisconsin law, that an employee remains bound to a prior (expired) employment agreement unless he can rebut the presumption given to the prior contract, has a long history under State law. The Wisconsin Supreme Court first laid out this principle in 1896, holding that "[w]hen one serves another under a contract for a year's service, and holds over, continuing in the service after the expiration of the year, there is a presumption, analogous to the presumption in the case of a yearly lease, that the parties consent to the continuance through another year of the contract of service." Kellogg v. Citizens' Ins. Co. of Pittsburgh, 69 NW 362, 362–63 (Wis. 1896). See also id. at 363 (Finding when employee was working for the employer on a "yearly salary for several years" as strong indicia that the employment agreement continued past its contract of service). Parties, like Brazil, may rebut this presumption "if evidence shows the parties have created a new contract or they cannot agree to new terms." Conway v. Trick, 532 NW2d 468, at *6 (Wis. Ct. App. 1995) (*unpublished*) (*citing* Borg-Warner, 118 Nw2d at 903).

Wisconsin case law has remained constant on this proposition since the late nineteenth century. See id.; Borg-Warner, 118 NW2d at 488–89; Meyers v. Wells, 31 NW2d 512, 515 (Wis. 1948) ("It is a general rule of law that if an employee continues working after his term expires and no new contract is made it will be presumed the parties intended he should be paid the same wages he received under the original contract"). The Wisconsin Court of Appeals, in an unpublished opinion, carefully examined these holdings, distilling them into "the general rule that when an employee under contract continues employment past the contract term without a new agreement, there is a presumption that employment continues on the same terms." Stewart v.

Douglas Stewart Co., Inc., 687 NW2d 548, at *3 (Wis. Ct. App. 2004) (*unpublished*). There, the employee kept working past the ten-year period of his employment agreement into 2000, despite the contract expiring in 1992. Id. at *1. Nevertheless, because neither party ably rebutted this presumption of continued employment under these prior terms, such as through negotiations to alter the prior agreement or other evidence that a new contract was formed, the employer was bound to compensate its former employee under the "expired" terms of the agreement up until 2000. Id. at *2. Further, the Court of Appeals noted, it "does not matter whether [the former worker] became an "at will" employee or had a right to an extended agreement in time increments." Id. Rather, "all provisions of the agreement, except its stated ten year duration, were extended by operation of law." Id. So, where it is "undisputed that [an employee] continued to work under the terms of her contract after the [expiration drafted into the contract]," there remains "a legal right to the benefits of that contract so long as [the employee] continued in the Company's employment without entering into a new contract." Id. at *3.

These clear holdings from Wisconsin courts pull both ways: While Mr. Brazil was owed the benefits he received under the expired-Employment Agreement, he also remained bound by its arbitration provision. To hold otherwise would be "illogical," leading to the proposition parties can pick and choose which terms to retain when the actions of both sides showed clear evidence, void of any rebuttal, that the substance of the Agreement was meant to continue to operate past its expiration date. Id. Instead, all terms of the contract, barring its expiration date, remained in effect up to the point Mr. Brazil was terminated in January 2021. Accordingly, it holds no bearing whether the alleged discriminatory actions occurred before or after the expiration of the Employment Agreement in December 2020. All instances of purported age-related discrimination occurred while Brazil and Menard were bound by their prior Employment Agreement, meaning all instances are arbitrable.

Wisconsin is not alone in holding that employees who keep working past the expiration date of their fixed-term employment contracts, remain presumptively bound by its prior terms, whether that be compensation packages or binding arbitration provisions.

See George v. LeBeau, 455 F.3d 92, 94 (2nd Cir. 2006) ("It is a general rule under New York law that '[w]hen, upon the expiration of a contract of employment for a definite term, the employee continues to render the same services as he rendered during the term of the contract without expressly entering into any new agreement, it will be presumed that he is serving under a new contract having the same terms and conditions as the original one and provisions and restrictions forming essential parts of the original contract, even though collateral to the employment itself, continue in force.'") (alteration in original) (internal quotation marks omitted); Foster v. Springfield Clinic, 410 NE2d 604, 607 (Ill. App. Ct. 1980) ("It has been repeatedly held that, where one party enters the employment of another under a special contract fixing the time and price to be paid, and continues in such employment after the term has elapsed, it will be presumed that the hiring and service were under the original contract.") (internal quotation marks omitted); Spencer v. Gen. Elec. Co., 243 F.2d 934, 938 (8th Cir. 1957) (interpreting Missouri law) (same); Brandenburg v. S.F.&G. Co., Inc., 114 A.2d 604, 606–07 (Md. Ct. App. 1955) (same); Barraza v. Pardo, 985 F. Supp. 2d 1369, 1372 (S.D. Fla. 2013) (interpreting Florida law) (same); Irwin v. Irwin, 300 SW3d 199, 203 (Tex. App. 1957) (same). See also WILLISTON ON CONTRACTS §6:43 ("When a contract of employment for a definite time has been made, and the employee's services are continued after the expiration of the definite time without objection, the inference is ordinarily that the parties have assented to another contract for a term of the same length with the same salary and conditions of service"); RESTATEMENT – AGENCY §442, COMMENT g, ("If an agent is employed for a specified period of a year or less, no notice of termination is required. If, however, the agent continues in the employment, without further arrangements being made, it is ordinarily inferred that the employment continues upon the same terms and for a similar period as that for which he was first employed."). With Wisconsin courts clear on the applicability of Mr. Brazil's prior Employment Agreement, it must be determined whether he consented to the contract when he only acknowledged its terms.

11

### 3. *It is Irrelevant that Brazil Never Signed Employment Agreement*

Another wrinkle exists in this matter: Mr. Brazil never signed his most recent Employment Agreement. Rather, he "acknowledged" it. See EMPLOYMENT AGREEMENT, doc. 12-1 at 7. But this can by disposed of quickly because Mr. Brazil himself "does not dispute that the contract with the arbitration agreement was not an enforceable contract." PLAINTIFF'S MEMORANDUM BRIEF IN OPPOSITION TO MOTION TO COMPEL ARBITRATION, doc. 19 at 12. Even if the plaintiff did challenge the contract's enforceability, he would be foreclosed by Wisconsin law. See Carroll v. Stryker Corp., 658 F.3d 675, 683 (7th Cir. 2011) (interpreting Wisconsin law) ("That Carroll did not sign the plan doesn't mean it's not a contract. Carroll accepted the 2008 compensation plan by performing under its terms, and the lack of his signature does not defeat this acceptance by performance."); Reinhart Foodservice LLC v. Bouraxis, 918 NW2d 127, at *3 (Wis Ct. App. 2018) (*unpublished*) (per curiam) ("[P]arties may become bound by the terms of a contract even though they do not sign it[.]") (alterations in original) (*quoting* Chudnow Constr. Corp. v. Com. Discount Corp., 180 NW2d 697, 698 (Wis. 1970)). Finally, having determined there is an enforceable contract at the time Brazil was terminated, the remaining query is whether this matter should be dismissed or instead stayed pending arbitration.

## D. **Whether this Matter should be Dismissed or Stayed**

Because of the binding arbitration agreement between the parties, Menard asks this Court to dismiss Mr. Brazil's Complaint entirely, and in the alternative to stay the litigation pending the arbitrators' ultimate decision. In turn, Mr. Brazil argues that if there was in fact a binding arbitration agreement in January 2021, then this matter should be stayed due to possible inability from refiling suit for this ADEA claim as well as possible other tort claims found in future discovery because of statute of limitations concerns.

When determining whether a stay is appropriate, this Court does not turn to Wisconsin law, but rather remains anchored by Eighth Circuit case law. See DROMKE ON COM. ARB. § 22:23 ("A choice of law provision indicating that a particular state law

should apply does not require one federal circuit to apply the case law of another circuit to determine whether to stay court action."). Section Three of the FAA states that trial courts "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Eighth Circuit has noted that the "FAA generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it." Green v. SuperShuttle Int'l, Inc., 653 F.3d 766, 769 (8th Cir. 2011). In Green v. SuperShuttle International, Inc., the Court looked at whether "all of the contested issues between the parties will be resolved by arbitration," with an eye turned towards statute of limitations concerns if the matter is dismissed instead of stayed. Id. at 770. However, "district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." Sommerfeld v. Adesta, LLC, 2 F.4th 758, 762 (8th Cir. 2021) (quoting Id. at 769–70).

While one judge of the Eighth Circuit has opined that district courts *must* stay arbitration, rather than dismiss the matter per the FAA's clear statutory commands, binding case law awards trial judges discretion in making its determination. See Unison Co., Ltd. v. Juhl Energy Dev., Inc., 789 F.3d 816, 821 (8th Cir. 2015) (Shepherd, J., concurring) ("I write separately to reiterate my view that section 3 of the Federal Arbitration Act unambiguously directs a district court to stay an action and does not give a district court the discretion to dismiss an action."). Regardless, to avoid any loss of possible claims because of statutes of limitations concerns, this matter should be stayed rather than dismissed. To hold otherwise would needlessly risk any claims later brought by Brazil that were foreclosed because of arbitration.

### III.  CONCLUSION

Federal courts have held a "longstanding judicial hostility to arbitration agreements," ranging in reasons from the lack of an Article III judge to properly apply constitutional and statutory demands to the difficulty in rectifying errors of arbitrators to many more serious concerns. Franke v. Poly-Am. Med. & Dental Benefits Plan, 555 F.3d 656, 658 (8th Cir. 2009) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S.

properly apply constitutional and statutory demands to the difficulty in rectifying errs of arbitrators to others. Franke v. Poly-Am. Med. & Dental Benefits Plan, 555 F.3d 656, 658 (8th Cir. 2009) (*quoting* Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). Nevertheless, Mr. Brazil and Menard have entered into a contract that expressly provides for such ADEA-related claims to be adjudicated in arbitration, not in this Court. Because this arbitration agreement, and the Employment Agreement itself, survived the contract's on-paper expiration date and the parties remained bound by its four corners in January 2021 when the plaintiff was terminated, this matter should be stayed so that arbitration can take place in Codington County.

IT IS HEREBY ORDERED that defendant Menard, Inc.'s motion to compel arbitration or, in the alternative, motion to stay litigation pending arbitration, Doc. 15, is granted in part and denied in part.

IT IS FURTHER ORDERED that defendant Menard, Inc.'s motion to compel arbitration is granted.

IT IS FURTHER ORDERED that defendant Menard, Inc.'s motion to dismiss for improper venue is denied.

IT IS FURTHER ORDERED that defendant Menard, Inc.'s motion to stay litigation pending arbitration is granted.

DATED this 27th day of April, 2022

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge